KTF:ANR/AT
F. #2021R01109

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANTS |
| - against - | |
| CIPRIAN DUDA and MARIAN FLOREA, | (18 U.S.C. § 1029(b)(2)) |
| | 22-MJ-814 |
| Defendants | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

      JAMES LILLA, being duly sworn, deposes and states that he is a Detective with the New York City Police Department ("NYPD") and a Task Force Officer with the United States Secret Service ("USSS"), duly appointed according to law and acting as such.

      In or about and between May 2020 and January 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CIPRIAN DUDA and MARIAN FLOREA, together with others, did knowingly and with intent to defraud, conspire to traffic in and use one or more unauthorized access devices, in a manner affecting interstate commerce, and by such conduct did obtain something of value during any one-year period, the aggregated value of which is equal to or greater than $1,000.

      (Title 18, United States Code, Section 1029(b)(2))

The source of your deponent's information and the grounds for his belief are as follows:[1]

I. Introduction

1. I am a Detective with the NYPD and a Task Force Officer with the USSS and have been involved in the investigation of numerous cases involving "skimming," a criminal technique described further below. I have been investigating crimes involving skimming since 2013, I have handled or recovered over 300 skimming devices from automated teller machines ("ATMs"), and I have participated in numerous skimming investigations. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendants' criminal history records; and from reports of other law enforcement officers involved in the investigation.

2. Since at least November 2021, the NYPD, along with the Department of Homeland Security, Homeland Security Investigations ("DHS-HSI") and the USSS has been investigating a group of individuals believed to be engaged in a large-scale ATM skimming conspiracy. In general, members of the conspiracy, including the defendants CIPRIAN DUDA and MARIAN FLOREA, participated in a scheme whereby they installed hidden card-reading devices on ATMs throughout Queens, New York, and in other counties in New York and both Pennsylvania and New Jersey, in order to steal bank account information, then used that stolen information to create bank cards, which they used to unlawfully withdraw large amounts of cash from various ATMs. Law enforcement has used various techniques as part of this investigation, including surveillance, as well as obtaining and reviewing financial records and other records.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

To date, based on their review of security footage, bank records, and other documentation, law enforcement assesses that members of the conspiracy stole identity information from more than one thousand victims and fraudulently obtained more than $2 million as part of this scheme.

II.     Background On Skimming

3.      Skimming is the act by which individuals, either alone or as part of a skimming conspiracy, use illegally installed devices to steal certain user information, either from point-of-sale terminals, ATMs, or other cardholder-reading devices. Because the conspiracy at issue here focuses on skimming from ATMs, I will focus on ATMs for the purposes of this explanation.

4.      Based on my training and experience, I know that individuals often conspire to install and remove skimming devices from ATMs. Skimming ordinarily requires building a device that is capable of covertly stealing card information from cards when inserted into the ATM. The individuals must then covertly install the card-reader in the slot where an ATM is inserted, and the individuals will also install a small camera to view unsuspecting victims typing in their PIN numbers. After a period of time – ordinarily 12 to 24 hours – the individuals will retrieve the skimming devices (card-reader and camera) and upload the information onto an electronic drive for review. The video footage from the camera is used to match the stolen card information with the PIN information that was entered.

5.      Often, after stealing identification information from an ATM and capturing user PINs, a skimming crew will then, using a specialized machine, upload the necessary identification information onto individualized cards—access devices—encoded by the individuals to extract the value of the bank information unlawfully obtained via the skimming devices. For example, information stolen from "Person A" will be uploaded onto "Card A", and

information stolen from "Person B" will be uploaded to "Card B".  The PIN number for each of the stolen cards will be written on or taped to each individual card – that way, a member of the conspiracy will be able to quickly and easily "cash out" at different ATMs – quickly insert a card, type in the necessary PIN number, and withdraw large amounts of cash, and then use the next card with stolen information.

      6.      Based on my training and experience, I know that skimming conspiracies often include several individuals that play interrelated roles, including at least one individual that understands how to build skimming devices, one individual that knows how to install and remove skimming devices, and one individual that knows how to transfer stolen identity information onto new cards for later use.  Other coconspirators often play other roles, including reviewing long hours of video footage to write down victims' PIN numbers or driving other members of the conspiracy to separate locations.  Members of the conspiracy often must coordinate and must constantly communicate, either due to emergencies, such as a discovered, broken or unremovable skimming device, or simply to coordinate what coconspirators will be playing what role on particular days or during particular hours – skimmers often "hit" many ATMs, even without a short distance, over a short period of time, even within a few hours.

    III.    <u>Probable Cause Regarding the Defendants CIPRIAN DUDA and MARIAN FLOREA</u>

      7.      Based on law enforcement surveillance; my review of still images from surveillance videos, surveillance videos, and documentary evidence, including banking records and other evidence; and my conversations with other law enforcement officers, there is probable cause to believe that the defendants CIPRIAN DUDA and MARIAN FLOREA participated in a skimming conspiracy along with at least five other individuals, all of whom have been repeatedly captured on surveillance video installing and removing skimming devices from ATMs.

8. As described further below, on many occasions, the defendant MARIAN FLOREA installed or removed skimming devices within the Eastern District of New York and elsewhere while being captured by surveillance video.[2] Furthermore, law enforcement uncovered additional evidence regarding DUDA and FLOREA through the execution of judicially authorized search warrants. For example, on January 31, 2022, the Honorable Cheryl L. Pollak, United States Chief Magistrate Judge, Eastern District of New York, signed a sealed warrant with Magistrate Number 22-MJ-95 (the "Premises Warrant") authorizing the search of two premises – a residence in Astoria, Queens (the "Astoria Premises") and a storage unit (the "Storage Premises"). On February 1, 2022, law enforcement executed the Premises Warrant. When law enforcement executed the Premises Warrant, skimming devices were found in both the Astoria Premises and the Storage Premises.

9. The execution of the Premises Warrant on the Astoria Premises uncovered that the defendant CIPRIAN DUDA resided in the top apartment. During the search of DUDA's apartment, law enforcement discovered an HP laptop that belonged to DUDA. The laptop included information for 56 stolen accounts and their associated PIN numbers. In addition, law enforcement discovered a skimming device in DUDA's living room as well as a camera device that I know, based on my training and experience, is commonly used to obtain PIN numbers as part of the skimming process. Coconspirators Eduard Constantin and Marius Lacatis, who were previously charged by complaint and indictment, respectively, with violations of Title 18, United States Code, Section 1029(b)(2), see 22-MJ-94 and 22-CR-190, participated in the skimming

---

[2] The defendant CIPRIAN DUDA has not been captured on surveillance video installing or removing a skimming device. As described further below, skimming devices were found in DUDA's apartment by law enforcement and DUDA has been captured on surveillance video using skimmed cards to conduct fraudulent purchases.

conspiracy with DUDA and the defendant MARIAN FLOREA and lived in the downstairs apartment at the Astoria Premises.  In Constantin and Lacatis's apartment, clothing of Constantin's was discovered that is the same clothing in which he was recorded on video surveillance engaging in skimming activities.  As depicted in Figure-1, the search of the Storage Premises uncovered a skimming mill, which included devices and tools that I know, based on my training and experience, are associated with skimming activity.



Figure-1

10. Law enforcement has also uncovered additional evidence connecting the defendant MARIAN FLOREA to the skimming conspiracy, including the use of an alias.  On November 16, 2021, the NYPD conducted a random car stop of a vehicle with an individual using the name "Georgias Spanudakis."  After the Storage Premises was searched, an invoice for another storage facility was uncovered that used the same alias "Georgias Spanudakis." Separately, during the relevant period of this conspiracy, physical surveillance was conducted, and a gray Volkswagen sedan (the "Vehicle") was observed participating in the skimming

activity. On December 7, 2021, I performed a Department of Motor Vehicles check on the Vehicle, and a moving violation was associated with it under the same alias – "Georgias Spanudakis." Further review of body camera footage from the November 16, 2021 stop and physical surveillance determined that "Georgias Spanudakis" – the alias associated with the Storage Premises and the Vehicle, both of which are connected to the skimming conspiracy as described above, was in fact FLOREA.

    11.  The defendants CIPRIAN DUDA and MARIAN FLOREA have engaged in skimming activities throughout the Eastern District of New York and elsewhere over the course of several years. Several of these skimming activities are described below as a sample of their criminal conduct:

      a.  On October 10, 2020, at a Key Bank branch located at 11 East 22nd Street in New York, New York, the defendant MARIAN FLOREA worked with a coconspirator to install a skimming device. This was captured by surveillance video, as can be seen in Figure-2 and Figure-3 below. FLOREA is the individual captured on video surveillance in Figure-2 wearing a dark jacket and dark baseball cap. In Figure-3, FLOREA, the individual on the left wearing a dark jacket and a dark baseball cap, was accompanied by another individual in the right of the photo. Based on my knowledge of the investigation, I know that the skimming

device was jammed into the ATM, and FLOREA and his coconspirator were unable to recover it. Subsequently, law enforcement recovered the skimming device.

 

Figure-2                                                                                           Figure-3

           b.        On another occasion, on October 26, 2020, at a Key Bank branch located at 981 US-6, Mahopac, New York, the defendant MARIAN FLOREA attempted to install a skimming device but was unable to do so. The skimming device was jammed in the ATM, and during installation, FLOREA cut himself and left blood on the machine. Law enforcement ran a DNA test, and the result identified FLOREA as a match. This was captured by surveillance video in Figure-4 below. In Figure-4, FLOREA is the individual wearing all dark clothing with stripes on the sleeve of his shirt:



Figure-4

c. Another instance of skimming activity occurred on November 18, 2021, at a Capital One bank branch located at 927 Flatbush Avenue, Brooklyn, New York. There, the defendant MARIAN FLOREA with coconspirator Eduard Constantin installed a skimming device. The skimming device was later recovered by Capital One and turned over to law enforcement. This was captured by surveillance video, a still of which is depicted in Figure-5 below. In Figure-5, FLOREA is in the left of the photograph wearing a dark jacket and a dark baseball cap. As can be seen in Figure-5, FLOREA was accompanied by another individual who installed a skimming device. Based on my knowledge of the investigation, I know that roughly twenty minutes later, another coconspirator, Marius Lacatis, removed the skimming device with another individual, as captured by Figure-6. As shown in Figure-6, Lacatis is in the right of the photograph wearing a dark jacket and a baseball cap with a light-colored brim.

 

Figure-5                                             Figure-6

d. In yet another example, on November 20, 2021, at a Santander bank branch located at 72-44 Boston Street in Queens, New York, the defendant MARIAN FLOREA used a skimmed debit number and associated PIN to cash out $480 from the unauthorized account. FLOREA successfully withdrew $480 from the Santander bank branch.

This "cash-out" was captured on video surveillance, which is depicted below in Figure-7. In Figure-7, FLOREA is in the left of the photograph wearing a dark jacket with a lighter top and a tan colored hat. He was accompanied by a female individual depicted in the right of the photograph.



Figure-7

    e.  On December 1, 2021, at a Capital One bank branch located at 927 Flatbush Avenue in Brooklyn, New York, the defendant MARIAN FLOREA installed a skimming device. Later that same day conconspirator Marius Lacatis removed the skimming device. The installation and removal of the skimming device was captured on video surveillance, which is depicted in Figure-8 and Figure-9. In Figure-8, FLOREA can be seen wearing a dark jacket and dark baseball cap. In Figure-9, LACATIS can be seen wearing a blue Nike sweatshirt with a dark colored vest and a dark baseball cap. In addition to the video surveillance, law enforcement physically surveilled the location and observed LACATIS remove the skimming device with coconspirator Eduard Constantin.



Figure-8                Figure-9

12. Additional evidence of the conspiracy between the defendant CIPRIAN DUDA and the coconspirators can be seen in the following example. On December 23, 2021, at a Capital One bank branch located at 41-60 Main Street, Queens, New York, coconspirators Marius Lacatis and Eduard Constantin installed a skimming device. The installation and removal of the skimming device was captured on video surveillance, which is depicted in Figure-10 and Figure-11. In Figure-10, the individual on the left is Constantin, who can be seen wearing a dark jacket and a dark hat (the hat was recovered during the search of the Astoria Premises); the individual on the right is Lacatis, who can be seen wearing a dark jacket and dark baseball cap while installing a skimming camera device at the ATM. In Figure-11, Constantin can be seen on the left wearing a dark jacket and a dark hat, and Lacatis, who subsequent to the events of Figure-10 had changed his outfit, can be seen wearing a blue and orange coat with fur,

11

a gray turtleneck, and a baseball cap. During this skimming event, credit card number ending in 2091 was skimmed.



Figure-10          Figure-11

13. On January 5, 2022, the defendant CIPRIAN DUDA visited an Apple store located in the 200 Baychester Avenue in the Bronx, New York and purchased $9,358.90 worth of items with the skimmed credit card number ending in 2091 that coconspirators Marius Lacatis and Eduard Constantin had obtained. DUDA was captured on video surveillance in the Apple store, which is depicted in Figure-12 and Figure-13; DUDA can be seen wearing a dark coat, gray scarf and light pants.



Figure-12          Figure-13

14. Based on law enforcement surveillance, my review of still images from surveillance videos, surveillance videos, my conversations with other law enforcement officers, and documentary evidence, including banking records and other evidence, there is probable cause to believe that the defendant CIPRIAN DUDA and MARIAN FLOREA are conspiring with each other and coconspirators Marius Lacatis, Eduard Constantin, and others to install and remove skimming machines. For example, DUDA and FLOREA installed and removed skimming devices that were removed or installed by other members of the conspiracy.

WHEREFORE, your deponent respectfully requests that the defendants CIPRIAN DUDA and MARIAN FLOREA be dealt with according to law.

*James Lilla/ VMS*
_____
JAMES LILLA
Task Force Officer, United States Secret Service

Sworn to before me this *by telephone*
__2__ day of August, 2022

*Vera M. Scanlon*
_____
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK